1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

JAMES A. LAWRENCE, JR.,

CASE NO. 2:21-cv-00299-LK

Plaintiff,

12

v.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13

STAR PROTECTION AGENCY LLC,

14

Defendant.

15

16          Plaintiff James A. Lawrence, Jr., a former mobile patrol officer for Star Protection Agency,

17   was terminated after he "medicated" with marijuana before a shift and then drove a company

18   vehicle over a curb. He then sued Star Protection for discrimination, retaliation, failure to

19   accommodate, harassment, breach of contract, and "employment negligence." Star Protection

20   moves for summary judgment on all claims. Dkt. No. 26. The Court grants its motion.

21                                I.          BACKGROUND

22   **A.      Mr. Lawrence Interviews with Star Protection and Completes its Onboarding Process**

23          In January 2019, Mr. Lawrence was employed with Toyota of Lake City and looking for a

24   new job. Dkt. No. 37 at 6. That month, Mr. Lawrence interviewed with Star Protection for a mobile

patrol officer position. *Id.* at 7; *see* Dkt. No. 35 at 3. Star Protection is a private security agency based in Bellevue, Washington that provides clients various professional security services, including mobile vehicle patrol and security consulting. Dkt. No. 35 at 1; Dkt. No. 1-1 at 2.

According to Mr. Lawrence's amended complaint, he disclosed to Star Protection's recruiter Justin Way during this interview that (1) he was seeking a new job because his current job "did [n]ot best suit [his] disabilities," and (2) he "used [m]edication to alleviate [his] [i]njuries." Dkt. No. 37 at 7; *see also* Dkt. No. 36 at 1–2, 10. Way avers that Mr. Lawrence never disclosed that "he was using medicinal cannabis for a disability," and notes that if he had, Way would have told him "the company could not hire him due to its zero tolerance policy." Dkt. No. 31 at 2–3. Way also states that he "discussed the physical requirements of the job" with Mr. Lawrence during the initial screening interview. *Id.* at 2.

Mr. Lawrence next interviewed with mobile patrol manager Jim Hatfield and supervisor Caleb Galati. Dkt. No. 37 at 7; Dkt. No. 35 at 3. They discussed "general schedule availability," which Mr. Lawrence alleges consisted of four 10-hour shifts. Dkt. No. 37 at 7. Notably, Star Protection's Senior Director of Human Resources states that the company "requires all mobile officers to work overtime," and that this policy "is discussed with each candidate during the initial interview, and is described in Overtime policy in the Employee Handbook and officer job descriptions." Dkt. No. 35 at 2. Indeed, the job descriptions for the Motor Patrol Officer and Security Officer positions—which Mr. Lawrence electronically signed on January 28, 2019—list the ability to "stand, walk, and/or drive for up to 90% of an 8-12 hour shift" and the ability to "work up to 12 hours straight" as "physical requirements." *Id.* at 59–60, 62, 64–66. Star Protection's Employee Handbook—which Mr. Lawrence signed on January 30, 2019—states that "[o]ccasionally some overtime may be required of nonexempt employees" and "[w]orking assigned overtime is an important part of each nonexempt employee's job responsibilities." Dkt.

No. 35 at 17, 55. The Handbook also states that "All Security Officer related positions typically provide services to our clients on a 24 hour/7 day a week basis, so their schedules will vary based on agreed upon hours of assignment." *Id.* at 15. On the same day he signed the Security Officer and Motor Patrol Officer job descriptions, Mr. Lawrence identified himself as "[n]ot [d]isabled" on a Voluntary EEO Self-Identification Form. Dkt. No. 37 at 7; Dkt. No. 35 at 88.

As part of his hiring and onboarding, Star Protection required Mr. Lawrence to pass multiple screenings, including a background check and drug test, to complete several trainings, and to review and acknowledge receipt of Star Protection's Employee Handbook and Accident Prevention and Safety Program. Dkt. No. 37 at 7–8; Dkt. No. 35 at 2–3, 55, 57, 68–79. The Employee Handbook includes a strict zero tolerance drug and alcohol policy prohibiting the use of alcohol or drugs "while on the job or in any other manner that may affect the employee's work performance," and permits testing at the company's discretion. Dkt. No. 35 at 28–29. Similarly, the Accident Prevention and Safety Program—which Mr. Lawrence signed on March 13, 2019— states that "[w]orking under the influence of alcohol or illegal drugs or using them at work is strictly prohibited and grounds for immediate termination." *Id.* at 74, 79.

**B.    Mr. Lawrence Asks to Not Work Overtime**

On April 28, 2019, Mr. Lawrence texted Galati shortly before he was scheduled to work an overtime shift, apologizing for the "late notice" and stating, "I was planning on coming in but my neck is saying stay home and lay down so In other words I won't be able to come in today." Dkt. No. 35 at 83. He explained that "it wouldn't be a good idea to work today and put extra strain on my neck as I still feel after effects from a Car Accident where I was Rear Ended a Year ago." *Id.* at 81, 83; Dkt. No. 37 at 8; Dkt. No. 29 at 1. Mr. Lawrence also called Hatfield to discuss his neck pain related to the 2018 accident and to express his desire to be excused from working overtime. Dkt. No. 37 at 8–9; Dkt. No. 35 at 84.

Mr. Lawrence's last-minute text did not comport with Star Protection's policy of giving at least four hours' notice, and on May 1, 2019, Galati and Hatfield met with Mr. Lawrence to give him a Disciplinary Action Form ("DAF"). Dkt. No. 37 at 9; Dkt. No. 35 at 22, 34–35, 81, 85–86. Mr. Lawrence refused to sign the DAF. Dkt. No. 37 at 9; Dkt. No. 35 at 82, 85–86. During the meeting, the three also discussed Mr. Lawrence's ability (or lack thereof) to work mandatory overtime. Dkt. No. 37 at 85–86; Dkt. No. 36 at 10.

Around this time, Galati offered Mr. Lawrence a static officer position, which would not require Mr. Lawrence to work overtime. Dkt. No. 37 at 9; Dkt. No. 29 at 2; *see also* Dkt. No. 35 at 1–2 (mobile patrol officers "provide random checks for businesses and physical security checks, parking control, removal of unauthorized persons, and emergency responses, while static officers provide on-site security without the use of a vehicle."). Mr. Lawrence declined this offer because it would pay less. Dkt. No. 37 at 9; Dkt. No. 29 at 2. Mr. Lawrence also alleges he was not interested because he would be "standing all day in a static position." Dkt. No. 37 at 9; *see* Dkt. No. 36 at 10. Star Protection asked Mr. Lawrence to provide medical documentation to support his request for an accommodation, but he did not do so. Dkt. No. 29 at 2. Mr. Lawrence claims Hatfield told him he did not care about Mr. Lawrence's health and that he "d[id] not want medical information[.]" Dkt. No. 37 at 9; Dkt. No. 36 at 10.

## C. Mr. Lawrence Accumulates More DAFs, Culminating in Termination After He Runs a Star Protection Vehicle Over a Curb

On May 16, 2019, Mr. Lawrence failed to show up or call out for his scheduled shift. Dkt. No. 35 at 90–91. Although his supervisor called and left messages to try to figure out where Mr. Lawrence was, Mr. Lawrence did not return any calls until the next day. *Id.* at 90. He claimed he could not make a phone call until then due to an anxiety attack. *Id.* The resulting DAF stated that it was Mr. Lawrence's "final notice," and that if he failed to follow the call-out procedure again,

he would be suspended pending investigation and possibly terminated. *Id.*

On July 23, 2019, Hatfield and another Star Protection officer found what they suspected to be a "partially smoked marijuana cigarette laying in the console" of a company vehicle. *Id.* at 93; *see also id.* at 94–96. The following week, Hatfield directed Galati to investigate who had last used the vehicle. *Id.* at 93. The route sheet revealed that Mr. Lawrence had used it last. *Id.* at 93, 96. Hatfield and Galati planned to meet with Mr. Lawrence regarding the issue. *Id.* at 93.

Then, in the early morning of July 31, 2019, Mr. Lawrence received a call from another officer while driving on patrol, and "in the process of answering the call" without using a Bluetooth connection, "accidentally" drove over a curb, grounding his vehicle and causing hundreds of dollars' worth of damage. *Id.* at 102; *see also id.* at 101, 103–08, 110; Dkt. No. 37 at 8, 10–11. Mr. Lawrence notified his lead officer and a tow company was called to retrieve the car. Dkt. No. 35 at 101–03. The lead officer who arrived on the scene shortly after the accident emailed the following message to Hatfield and Galati afterwards:

> Jim, [I] had Lawrence fill out the incident report information and [I] got pictures of the car as it was when [I] arrived on site. I called skyway towing to get it towed out to Brody's [Mufflers Brakes and Radiators], the earliest they said they could make it out there was 8am. . . . I can't say for sure if Lawrence was under the influence of anything or not, because he always acts kind of weird, but he was acting a little stranger at the time th[a]n normal, like he had a really slow reaction time when [I] was talking to him and telling him to put his stuff in my patrol car. Possibly worth looking into though, as he could be on pain medicine because he's always talking [about] his back hurting and having shoulder spasms from his prior car accident.

*Id.* at 109. A few hours later, Mr. Lawrence submitted to a drug screening which came back positive for marijuana. Dkt. No. 35 at 117–18; *see* Dkt. No. 37 at 11; Dkt. No. 36 at 5. Mr. Lawrence later admitted that he had "medicated" with marijuana prior to his shift. Dkt. No. 27 at 12.

On August 8, 2019, Mr. Lawrence again failed to show up for his scheduled shift. He did not answer or return a call from Hatfield, instead texting Galati to tell him that he "couldn't talk to

anyone on the phone because of his depression and mental health." Dkt. No. 35 at 100.

In a final DAF dated August 8, 2019, Star Protection terminated Mr. Lawrence's employment "due to his involvement in an accident and being under the influence of THC at the time." Dkt. No. 35 at 98; *see id.* at 100. Mr. Lawrence disagreed with Star Protection's statement of events and refused to sign the DAF, but "accept[ed] the termination." Dkt. No. 37 at 11; *see also* Dkt. No. 35 at 99.

After filing a complaint with the Equal Employment Opportunity Commission ("EEOC"),[1] Mr. Lawrence initiated this action pro se on March 5, 2021, alleging that Star Protection violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Washington Law Against Discrimination, Wash. Rev. Code § 49.60.010, *et seq.* ("WLAD"), by failing to accommodate his disability, failing to engage in the interactive process, and harassing him on the basis of his disability. Dkt. No. 1 at 1, 4, 6; Dkt. No. 37 at 4, 6. He also advances claims of breach of contract and "employment negligence." Dkt. No. 37 at 4.

## II.    DISCUSSION

Star Protection moves for summary judgment on Mr. Lawrence's claims, arguing that Mr. Lawrence is not a "qualified individual" under the ADA or WLAD, that it did offer Mr. Lawrence a reasonable accommodation, and that it ultimately terminated him for violations of the company's safety and zero tolerance drug policies. Dkt. No. 26 at 14–20. Star Protection further argues that Mr. Lawrence's breach of contract and negligence claims are not cognizable. *Id.* at 22.

### A.    Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331 because Mr. Lawrence asserts claims under 42 U.S.C. § 12101, *et seq.* for alleged violations of the ADA. The Court has discretion to

---

[1] Mr. Lawrence filed a charge with the EEOC on or about January 17, 2020, and received a right to sue letter on February 29, 2021. Dkt. No. 1-1 at 1; Dkt. No. 37 at 17.

exercise supplemental jurisdiction over Mr. Lawrence's state law claims under 28 U.S.C. § 1367(a).

**B.      Summary Judgment Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. To the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (cleaned up).

Mr. Lawrence's pro se status does not negate the applicability of these summary judgment

1    rules. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey*

2    *v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc); *Engler v. City of Bothell*, No. C15-

3    1873-JLR, 2016 WL 3453664, at *3 (W.D. Wash. June 20, 2016). Although the Court must

4    liberally construe pleadings filed by a pro se non-moving party, *Resnick v. Hayes*, 213 F.3d 443,

5    447 (9th Cir. 2000), it is a pro se litigant's burden to present evidence in opposition to a motion

6    for summary judgment or otherwise demonstrate that there is a genuine dispute regarding a

7    material fact, *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

8    **C.    Scope of the Record**

9            The Court first addresses Star Protection's motion to strike since it bears upon the scope of

10   the record. Star Protection asks the Court to "strike or disregard every unsupported factual

11   allegation and factual conclusion throughout" Mr. Lawrence's response in opposition to its motion,

12   as well as "three unauthenticated documents" he attaches to his opposition. Dkt. No. 33 at 2–3; *see*

13   Dkt. No. 36 at 9–11 (unauthenticated documents); Fed. R. Civ. P. 56(c), (e).

14           When reviewing a motion for summary judgment, the Court may "consider admissible

15   evidence," *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 998 (9th Cir. 2019), as well

16   as "unauthenticated evidence . . . if the evidence can 'be presented in a *form* that would be

17   admissible' at trial," *Harlow v. Chaffey Cmty. Coll. Dist.*, 2022 WL 4077103, at *1 (9th Cir. Sept.

18   6, 2022) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Because Star Protection has

19   failed to show that the three contested documents cannot be presented in a form that would be

20   admissible at trial, *see* Fed. R. Civ. P. 56(c)(2), the Court declines to strike the documents.

21           With respect to Mr. Lawrence's allegations and conclusions, the Court has considered the

22   lack of evidentiary support for his bald assertions, conclusory beliefs, and personal opinions in

23   determining the weight to be accorded to his arguments, but, in deference to his pro se status, has

24   considered all of these arguments with the exception of his new assertions regarding race

discrimination. As to the latter, nothing in Mr. Lawrence's amended complaint, Dkt. No. 37, directly or indirectly suggests that race discrimination has anything to do with his claims. And he "may not effectively amend [his] Complaint by raising a new theory . . . in [his] response to a motion for summary judgment." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))). Therefore, the Court strikes these newfound theories. For the same reason, Mr. Lawrence's request for further discovery to investigate Star Protection's alleged racial discrimination against a different Star Protection officer, Dkt. No. 36 at 1, 4–5, 8, is denied.

Star Protection's motion to strike is granted in part and denied in part.

**D.   Star Protection is Entitled to Summary Judgment on Mr. Lawrence's ADA and WLAD Claims**

Star Protection asserts that it is entitled to summary judgment on Mr. Lawrence's ADA and WLAD claims because Mr. Lawrence has failed to establish at least one element of each of those claims. Dkt. No. 26 at 14–22. The Court agrees for the reasons set forth below.

1.   <u>Discrimination Under the ADA and WLAD</u>

Individuals with physical or mental impairments that substantially limit one or more of their major life activities are protected under the ADA. 42 U.S.C. §§ 12101, 12102(1)(A). The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such

1    individual holds or desires." *Id.* § 12111(8).

2           Similarly, the WLAD protects the right of individuals with "any sensory, mental, or

3    physical disability" to "obtain and hold employment without discrimination[.]" Wash. Rev. Code

4    § 49.60.030(1)(a). Under Washington law, "disability" is defined as "the presence of a sensory,

5    mental, or physical impairment" that is "medically cognizable or diagnosable," "[e]xists as a

6    record or history," or is "perceived to exist whether or not it exists in fact." *Id.*

7    § 49.060.040(7)(a)(i)–(iii). It is an unfair practice for any employer to discharge or discriminate

8    against a person on the basis of a disability. *Id.* § 49.060.180(2)–(3); *see Bell v. Boeing Co.*, 599

9    F. Supp. 3d 1052, 1069 (W.D. Wash. 2022).

10          2.     Mr. Lawrence's Failure to Accommodate and Interactive Process Claims

11          Although "[j]udicial interpretations of the ADA and the WLAD differ slightly in the way

12   they phrase the elements of an accommodation claim under the two statutes," the "basic

13   requirements are essentially the same." *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300,

14   1314 (W.D. Wash. 2014). "Both statutes require the plaintiff to show that (1) she is disabled;

15   (2) she is qualified for the job in question and capable of performing it with reasonable

16   accommodation; (3) the employer had notice of her disability; and (4) the employer failed to

17   reasonably accommodate her disability." *Id.*; *see* 42 U.S.C. § 12112(b)(5)(A); Wash. Rev. Code

18   § 49.60.040(7)(d).

19          Informing an employer of a needed accommodation "triggers a duty to engage in an

20   'interactive process' through which the employer and employee can come to understand the

21   employee's abilities and limitations, the employer's needs for various positions, and a possible

22   middle ground for accommodating the employee." *Snapp v. United Transp. Union*, 889 F.3d 1088,

23   1095 (9th Cir. 2018); *see Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019); *Brownfield

24   v. City of Yakima*, 316 P.3d 520, 534 (Wash. Ct. App. 2014). Importantly, though, an employer is

only obligated to engage in the interactive process if the individual requesting the accommodation is "otherwise qualified"; meaning (among other things) that they could perform the essential functions of the job with an accommodation. *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (internal quotation marks omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also Davis v. Microsoft Corp.*, 70 P.3d 126, 131–32 (Wash. 2003).

For the purposes of its motion, Star Protection does not dispute that Mr. Lawrence is disabled or that he asked for an accommodation. Rather, Star Protection contends that (1) Mr. Lawrence was not a "qualified individual" due to both his marijuana use and his inability to perform an essential function of his job (work overtime), and (2) they offered him a reasonable accommodation, which Mr. Lawrence refused. Dkt. No. 26 at 14–15, 18–19.

The Court assumes without deciding that Mr. Lawrence was disabled[2] during his employment and that he properly put Star Protection on notice of his disability. Even so, Mr. Lawrence has not identified an issue for trial with respect to whether working mandatory overtime constitutes an essential function of the mobile patrol officer position or whether he could perform said function with a reasonable accommodation. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc); *Dark v. Curry Cnty.*, 451 F.3d 1078, 1086 (9th Cir. 2006). To determine whether a function is essential under the ADA, courts consider evidence such as "the employer's judgment as to what functions of a job are essential"; "job descriptions prepared before advertising or interviewing applicants"; "the amount of time spent on the job performing the function"; "the consequences of not requiring the applicant or employee to perform the function"; and "the work experience of current and former employees." *Bates*, 511 F.3d. at 991 (cleaned up)

---

[2] The Court refers here to Mr. Lawrence's alleged physical disabilities connected to the 2018 car accident. Although Mr. Lawrence also mentions suffering from PTSD, anxiety, and depression, and alludes to substance abuse or addiction, there is no evidence that Mr. Lawrence requested any accommodation from Star Protection for these conditions prior to termination. *See* Dkt. No. 37 at 5, 11; Dkt. No. 36 at 4, 6.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

(citing 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(n)(3)). Under the WLAD, the term "essential functions" is derived from the ADA and is defined as "a job duty that is fundamental, basic, necessary, and indispensable to filling a particular position, as opposed to a marginal duty divorced from the essence or substance of the job." *Davis*, 70 P.3d at 132.

In support of Star Protection's claim that mandatory overtime is an essential function of the mobile patrol officer role, it points to (1) the relevant job descriptions Mr. Lawrence signed, Dkt. No. 35 at 59–60, 62, 64–66; (2) the Employee Handbook Mr. Lawrence signed, *id.* at 17, 55; and (3) a sworn declaration submitted by Star Protection's Senior Director of Human Resources, *id.* at 1–4, all of which state that working overtime is a fundamental duty of a mobile patrol officer. The top physical requirements listed in the relevant job descriptions are being able to "stand, walk, and/or drive for up to 90% of an 8-12 hour shift" and to "work up to 12 hours straight[.]" *Id.* at 60, 64–65. Additionally, Hatfield noted that working overtime was particularly crucial during Mr. Lawrence's term of employment because the mobile patrol division was down four officers. *See id.* at 86. Mr. Lawrence has presented no evidence disputing the contention that working mandatory overtime is an "essential function" of the job.

Similarly, Mr. Lawrence has not alleged that he could perform this function with reasonable accommodation. Instead, he expressly states that he could "no longer work Mandatory Overtime because of [his disability]." Dkt. No. 36 at 2; *see also* Dkt. No. 37 at 9 ("My Formal Request for Accommodation was to not be put on the Schedule for 5 days and to only allow me to work my standard 4/10, Due to the fact I was disabled[.]"). Accordingly, Mr. Lawrence fails to establish a genuine dispute of material fact as to whether he was "qualified" for the mobile patrol position. *See Lezama v. Clark Cnty.*, 817 F. App'x 341, 345 (9th Cir. 2020) (affirming summary judgment where plaintiff sought exemption from performing essential physical functions of a position); *Davis*, 70 P.3d at 133 (concluding employer was entitled to judgment as a matter of law

where disabled plaintiff was unable to work more than 40 hours per week, an essential function of the relevant position).[3]

Importantly, "Washington courts, like federal courts, do not recognize a free-standing interactive process claim absent a possibility of accommodation as a basis of a disability discrimination claim." *Alexander v. Boeing Co.*, No. C13-1369-RAJ, 2014 WL 3734291, at *10 (W.D. Wash. July 28, 2014); *see Snapp*, 889 F.3d at 1095. Because Mr. Lawrence was not "qualified," Star Protection was not obligated to engage in an interactive process as prescribed by the ADA and WLAD. The Court notes that even when there is a possibility of accommodation, employers are not required to create a new position or eliminate essential job functions to accommodate the employee. *See Dark*, 451 F.3d at 1089; 29 C.F.R. § 1630.2(o); *Frisino v. Seattle Sch. Dist. No. 1*, 249 P.3d 1044, 1049 (Wash. Ct. App. 2011). In addition, to defeat summary judgment on an interactive process claim, the plaintiff bears the burden of showing that a facially reasonable accommodation existed that would have allowed him to perform the essential functions of the job. *Dark*, 451 F.3d at 1088.

Here, Mr. Lawrence has presented no evidence that a reasonable accommodation—short of being excused from working overtime altogether—existed. *See, e.g.*, Dkt. No. 36 at 8. Furthermore, it is undisputed that Star Protection met with Mr. Lawrence in response to his complaints about working overtime, discussed his disability, and offered him a different security officer position that did not require working overtime. Dkt. No. 35 at 85; Dkt. No. 29 at 2. Mr.

---

[3] Because the Court finds that Mr. Lawrence was not a "qualified person" with a disability due to his inability to perform an essential function of the job, it need not reach the question of whether Mr. Lawrence's cannabis use similarly disqualified him. The Court notes, however, that the term "'qualified individual with a disability' [under the ADA] does 'not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.'" *Collings v. Longview Fibre Co.*, 63 F.3d 828, 831 (9th Cir. 1995) (quoting 42 U.S.C. § 12114(a)); *see also Anthony*, 955 F.3d at 1131 (holding that "after-acquired evidence remains available . . . to show that an individual is not qualified under the ADA").

1    Lawrence also has not submitted any credible evidence disputing Galati's sworn statement that he

2    and Hatfield asked Mr. Lawrence to provide a doctor's note in support of his requested

3    accommodation and that Mr. Lawrence did not do so. Dkt. No. 29 at 2. Instead, Mr. Lawrence

4    unconvincingly argues that Star Protection should have been sufficiently aware of his disabilities

5    based on (1) the 2018 accident being listed in his driving record and (2) a December 20, 2018 letter

6    from his former attorney to Toyota of Lake City stating that Mr. Lawrence missed work one day

7    because he was meeting with the attorney and because he was "experiencing neck and back pain."

8    Dkt. No. 36 at 2, 9. Thus, Mr. Lawrence fails to establish a genuine issue of fact as to whether Star

9    Protection made a good faith effort to reasonably accommodate him. *Garcia*, 918 F.3d at 1010

10   ("[A]n employer does not have a duty under the ADA to engage in further interactive processes in

11   the absence of requested medical evidence." (cleaned up)); *see also, e.g.*, *McDaniels*, 57 F. Supp.

12   3d at 1315 (granting defendant summary judgment on plaintiff's failure to accommodate claim

13   under the ADA and WLAD where defendant presented "substantial undisputed evidence of its

14   efforts to accommodate [plaintiff's] disabilities").

15          For these reasons, the Court grants Star Protection's motion for summary judgment on Mr.

16   Lawrence's accommodation and interactive process claims under the ADA and WLAD.

17          3.     Mr. Lawrence's Discrimination and Retaliation Claims

18          Mr. Lawrence further alleges that Star Protection subjected him to unequal terms and

19   conditions of employment, unlawfully retaliated against him, and impermissibly terminated his

20   employment. Dkt. No. 37 at 4.

21          Claims for discrimination and retaliation under the ADA and WLAD are analyzed under

22   the burden-shifting framework outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S.

23   792, 802–04 (1973). *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014);

24   *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019). Under this framework,

a plaintiff must first establish a prima facie case of discrimination or retaliation. *Curley*, 772 F.3d

at 632. If he succeeds, the burden shifts to the defendant to offer a nondiscriminatory and

nonretaliatory explanation for the adverse employment action. *Id.* If the defendant articulates a

legitimate explanation, the burden then shifts back to the employee "to prove that the reason given

by the employer was pretextual." *Id.*

     To establish a prima facie case of disability discrimination under the ADA or WLAD, Mr.

Lawrence must show that: (1) he is disabled within the meaning of the statute; (2) he is qualified

within the meaning of the statute; and (3) the employer terminated his employment because of his

disability. *Erickson*, 417 F. Supp. 3d at 1378. To establish a prima facie case for retaliation under

either statute, Mr. Lawrence must show that (1) he engaged in protected activity; (2) he suffered

an adverse employment action; and (3) there was a causal link between the two. *McElwain*, 244 F.

Supp. 3d at 1100. Liberally construing Mr. Lawrence's submissions, the Court finds the relevant

protected activity here to be requesting an accommodation, i.e., asking to not work overtime due

to his injuries, Dkt. No. 36 at 10; Dkt. No. 37 at 9–10, and the relevant adverse employment action

to be termination, Dkt. No. 37 at 10–11.[4]

     Here, even if Mr. Lawrence could make out a prima facie case for discrimination or

retaliation, his claims fail because Star Protection has identified undisputed and legitimate reasons

for Mr. Lawrence's termination, and Mr. Lawrence has not raised a genuine issue of material fact

as to whether such reasons were pretextual.[5] Star Protection has shown that it terminated Mr.

---

[4] The Court does not consider the other interim disciplinary measures in the record, Dkt. No. 35 at 81–82, 90–91, to
constitute adverse employment actions in this context. They did not materially change Mr. Lawrence's employment
status and were not reasonably likely to deter other employees from requesting an accommodation. *See, e.g.*, *Pardi v.
Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004); *Bell*, 599 F. Supp. 3d at 1076. Even if they were, Star
Protection had legitimate reasons for writing Mr. Lawrence up; namely, Mr. Lawrence's clear violations of the
company's call-out procedures.

[5] "[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is
'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing

Lawrence's employment following a series of disciplinary actions for his violations of company policies, culminating in the most serious violations: his single-car accident and failed drug test. *See* Dkt. No. 35 at 98–100 (describing the circumstances surrounding Mr. Lawrence's termination); *id.* at 117–18 (Mr. Lawrence's positive drug test results); *see also Collings*, 63 F.3d at 832–33 (noting that the ADA permits employers to prohibit drug-related misconduct at the workplace and to terminate employees for violations of no-drug policies). Because there is nothing in the record indicating that Star Protection's legitimate explanation for Mr. Lawrence's termination was pretext for a discriminatory or retaliatory motive, or that discriminatory or retaliatory animus was a motivating factor in his termination, Star Protection is entitled to summary judgment on Mr. Lawrence's discrimination and retaliation claims under the ADA and WLAD. *See, e.g.*, *Curley*, 772 F.3d at 632–34; *Bell*, 599 F. Supp. 3d at 1074, 1078–79; *Wood v. Boeing Co.*, No. C20-512-MJP, 2021 WL 1720993, at *5 (W.D. Wash. Apr. 30, 2021), *reconsideration denied*, 2021 WL 2206502 (W.D. Wash. June 1, 2021).[6]

Therefore, the Court grants Star Protection's motion for summary judgment on Mr. Lawrence's discrimination and retaliation claims under the ADA and WLAD.

### 4.   Mr. Lawrence's Harassment Claim

Star Protection construes Mr. Lawrence's harassment allegations as a hostile work environment claim. Dkt. No. 26 at 20–22. Although neither the Ninth Circuit nor the Supreme Court has expressly held that there is such a claim based on disability discrimination under the

---

that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000); *see also Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093–94 (9th Cir. 2001); *Bell*, 599 F. Supp. 3d at 1073.

[6] To the extent Lawrence is pursuing separate claims for disparate treatment under the ADA or WLAD, as explained above, he has not shown direct evidence of a discriminatory motive on the part of Star Protection or shown that Star Protection's stated reason for termination or any other adverse employment action was pretextual under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 911 (W.D. Wash. 2019) (discussing disparate treatment claims under the ADA and WLAD). Nor has he alleged that he was treated differently than any coworkers.

ADA, the Ninth Circuit has assumed without deciding that such a claim exists. *E.g.*, *Garity v. APWU Nat'l Lab. Org.*, 655 F. App'x 523, 524 (9th Cir. 2016); *Jefferson v. Time Warner Cable Enterprises LLC*, 584 F. App'x 520, 522 n.1 (9th Cir. 2014); *Glass v. Intel Corp.*, 345 F. App'x 254, 256 (9th Cir. 2009); *Brown v. City of Tucson,* 336 F.3d 1181, 1190 & n. 14 (9th Cir. 2003). Courts within the Ninth Circuit have adopted the Fifth Circuit's test for a harassment or hostile work environment claim, as articulated in *Flowers v. Southern Regional Physician Services Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001). *E.g.*, *Mattioda v. Bridenstine*, No. 20-CV-03662-SVK, 2021 WL 75665, at *18 (N.D. Cal. Jan. 8, 2021); *Anello v. Berryhill,* No. 18-CV-00070-DMR, 2019 WL 285197, at *10–11 (N.D. Cal. Jan. 22, 2019); *Northrop v. Safeway, Inc.*, No. C16-350-TSZ, 2017 WL 1543331, at *2 & n.3 (W.D. Wash. Apr. 28, 2017). Under this test, the plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability or disabilities; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers*, 247 F.3d at 235–36. "Moreover, the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (quotation marks omitted). These elements are identical under the WLAD. *See Daniel v. Boeing Co.*, 764 F. Supp. 2d 1233, 1244 (W.D. Wash. 2011) (citing *Robel v. Roundup Corp.*, 59 P.3d 611, 616 (Wash. 2002)).

In this case, assuming there is a claim for harassment under the ADA and applying the relevant factors under the WLAD, Mr. Lawrence's claim fails. Mr. Lawrence has not established that a reasonable juror could find that the alleged mistreatment was sufficiently severe or pervasive enough to alter the terms of his employment or create an objectively abusive work environment. *See* Dkt. No. 36 at 10; Dkt. No. 37 at 8–10; *Northrop*, 2017 WL 1543331, at *3 (explaining that unpleasant but isolated incidents are insufficient to sustain a hostile work environment claim under

ADA or WLAD); *Daniel*, 764 F. Supp. 2d at 1245 (dismissing claim when plaintiff failed to show "any derogatory comments or actions that pervaded the workplace to such an extent that they altered the terms and conditions of [plaintiff's] employment"). Accordingly, Star Protection's motion for summary judgment is granted as to Mr. Lawrence's harassment claims under the ADA and WLAD.

**E.      Star Protection is Entitled to Summary Judgment on Mr. Lawrence's Breach of Contract and Negligence Claims**

Mr. Lawrence's final two claims for breach of contract and employment negligence cannot withstand summary judgment. Mr. Lawrence appears to assert that he is entitled to relief on the basis of "[b]oth the Employer and Union['s] Breach of Contract [and] Employment Negligence by default for Disability Discrimination[.]" Dkt. No. 37 at 13. He specifically alleges that Star Protection "defaulted to allow Marijuana use by Breaching Contract on the basis of their EEO Employer Relations Section" of the Employee Handbook, and that at the time of his termination, Star Protection was "in Default of Employment Negligence for Failing to Reasonably accommodate a qualified individual[.]" *Id.* at 11, 13. Star Protection has moved for summary judgment on both claims, Dkt. No. 26 at 22, and Mr. Lawrence has not asserted any non-conclusory factual allegations to sustain his claims. *See Hernandez*, 343 F.3d at 1112 (a plaintiff "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements").

To the extent Mr. Lawrence is attempting to argue that Star Protection's drug policies were negated because it breached the "Equal Employment Opportunity" subsection of the "Employee Relations" section of its Employee Handbook, he has not stated a cognizable legal theory supporting such a claim. Moreover, in his response brief, he concedes that "[t]he Employee Handbook Indeed might not be a contract," and then raises a new allegation: "the Agreement

between SEIU 6 and Star Protection proves Breach of a Contract." Dkt. No. 36 at 7. Again, Mr. Lawrence "cannot turn around and surprise the [defendant] at the summary judgment stage" with a new theory of liability. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000).

Finally, to the extent Mr. Lawrence's negligence claims are not subsumed by his ADA and WLDA claims against Star Protection discussed above, the Court is unable to decipher specific facts demonstrating a genuine issue for trial with respect to such a claim. *Matsushita Elec.*, 475 U.S. at 587. If Mr. Lawrence is attempting to argue that Star Protection is liable for negligently hiring, retaining, training, or supervising *him* in relation to his disability, he has failed to adequately support such a claim.

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Star Protection's Motion for Summary Judgment on all of Mr. Lawrence's claims. Dkt. No. 26.

Dated this 6th day of March, 2023.

Lauren King
United States District Judge